**Robert H. PALUCKI,**
**Plaintiff–Appellant,**

v.

**SEARS, ROEBUCK & COMPANY,**
**Defendant–Appellee.**

**No. 88–2086.**

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1989.
Decided July 21, 1989.

Arthur L. Klein, Arnstein Gluck Lehr & Milligan, Michael A. Stiegel, Paul E. Starkman, Chicago, Ill., for defendant-appellee.

L. Steven Platt, Arnold & Kadjan, Charles A. Linn, Chicago, Ill., for plaintiff-appellant.

Before POSNER and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

The district court granted summary judgment for the defendant, Sears Roebuck, in this suit charging age discrimina-

tion in employment (29 U.S.C. §§ 621 *et seq.*), and dismissed the suit. 687 F.Supp. 388 (N.D.Ill.1988). The plaintiff, Robert Palucki, had risen steadily through the ranks at Sears, where he had started working at the age of 16. By 1981, at the age of 40, he was the manager of the home-appliances division of a Sears store in Park Forest, a suburb of Chicago. That year, as part of a general reorganization of Sears's business, the management of the store created a new division which combined the jewelry, cosmetic, and shoe departments. Palucki was named manager of the new division. He was not happy with the move, because his managerial experience had been limited to "big ticket" items, such as furniture and appliances; managing "small ticket" items involves special problems, such as security (in the case of jewelry) and the supervision of part-time as well as full-time help. Palucki was not successful in his new job, and after a year he was fired and replaced by a man in his early thirties, precipitating this lawsuit.

Although the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973), warned that the order-of-proof scheme it was adopting to guide the litigation of discrimination claims should not be fetishized, see also *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 and n. 6, 101 S.Ct. 1089, 1094 and n. 6, 67 L.Ed.2d 207 (1981), that is what Palucki wants us to do with it. He argues as follows. He was over 40 when he was fired, and therefore was within the class protected by the Age Discrimination in Employment Act, and he was replaced by a person under 40. This he contends made out a prima facie case and placed on Sears the burden of producing a reason other than age for firing Palucki. Although Sears did this and presented evidence showing numerous deficiencies in Palucki's management of the new division, Palucki responded with his own evidence— his deposition and that of another former employee, Fasano, as well as depositions of several subordinates of Palucki—both to rebut the evidence of deficiencies and to establish that Sears had maintained a "hit list" of older employees on which Palucki's

name had appeared prior to his transfer to the new division. Therefore, Palucki claims, he created a genuine issue of material fact, precluding the grant of summary judgment and entitling him to a jury trial.

This is a bit too neat. What is true is that evidence sufficient to establish what is loosely termed in these cases a "prima facie case" does place on the employer the burden of coming forward with a noninvidious explanation for why the plaintiff was fired, or not hired, or otherwise treated unfavorably in employment, as the case may be. If the employer fails to produce such an explanation the plaintiff wins, while if the employer does produce an explanation the plaintiff must show it to be unworthy of belief—or lose his case. Thus the *McDonnell Douglas* "prima facie case" is not a "real" prima facie case, in the conventional sense of a case strong enough to withstand a defendant's motion for summary judgment, because it does not entitle the plaintiff to a trial. More properly termed a presumption, it is a device for making the defendant speak, and once he does speak it falls out. See, e.g., *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; *Washington v. Electrical Joint Apprenticeship & Training Comm.,* 845 F.2d 710, 714 (7th Cir.1988).

But it does not follow from all this, as Palucki appears to believe, that if the plaintiff *does* rebut the employer's rebuttal —not in the sense of demolishing it but in the sense of contesting it with his own, contrary evidence—he automatically defeats summary judgment and secures his right to a trial. The district court must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff. Cf. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If not, the court must grant the employer's motion for summary judgment.

So let us examine the state of the record when the motion was made. Palucki ac-

knowledged that he had had problems adjusting to the new division, and indeed that the problems had never been solved. But he tried to turn this debit into a credit by arguing that Sears had transferred him to the new division hoping he would fail so that it would have a pretext for firing him. This is an *exceedingly* improbable plot. Remember that Palucki was not just transferred to the staff of the new division but was made the division head, and the division combined three departments. This was an important job and it is hard to believe, without evidence, that Sears—concretely, the manager of the store, whose career depended on the success of the divisions under his supervision—would fill the job with someone expected to make a botch of it. Nor was this someone an older person whom a rapacious employer might want to discharge because he was approaching the age at which he could retire with a big pension. Palucki was only 40 when he was appointed to his new job and as far as the record shows this was decades away from retirement for him. Although there are jobs for which a 40–year-old would be considered superannuated, we are not aware that division manager in a department store is one of them; and it is relevant to note in this connection that the person who replaced Palucki as head of the home-appliances division was in his fifties. On top of all this there is extensive and largely unrebutted evidence that Palucki really did screw up in the new job. He received three written deficiency reports during his one-year tenure, and while he argues that he should have been given more time to correct them, he does not contest the genuineness of the deficiencies, which were indeed numerous and apparently serious; they included repeated failures to maintain adequate security for jewelry and to schedule part-time workers when they were needed. Apparently Palucki was disgruntled at being transferred out of his beloved big-ticket milieu and unable or unwilling to adjust.

■ Against all this, Palucki's deposition evidence, however sincere, that Sears took too hard a view of his deficiencies is entirely unavailing, and gains nothing from depositions by the employees under him that they thought Palucki was doing an okay job. See, e.g., *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 924 (7th Cir. 1988). The employee doesn't get to write his own job description. An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age. He can set unrealistic standards and fire an employee for not being able to meet them; he can (as perhaps happened here) try to force a square peg into a round hole—and throw away the peg when it doesn't fit. See, e.g., *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir.1987); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986); *Grohs v. Gold Bond Building Products*, 859 F.2d 1283, 1287–88 (7th Cir.1988). He can be as arbitrary as he wants—he just cannot treat an older employee more harshly than a younger one. Palucki's deposition provides no evidence of mistreatment based on age. It portrays (whether accurately or not is irrelevant) Sears as hard-hearted—a scrooge, unsympathetic to the adjustment problems of a loyal and long-standing, although far from elderly, employee. That evidence fails to dent Sears's evidence that Palucki was fired because he failed to perform in his new job up to Sears's expectations.

■ As nothing we have said so far provides a premise from which a reasonable jury could infer that Palucki was fired because he was over 40, Fasano's deposition becomes critical. A plainly disgruntled ex-Sears manager who had been fired —he claims because of *his* age (late fifties) —two years before Palucki, Fasano stated in his deposition that he had heard Sears executives say they had a hit list of older workers whom they wanted to get rid of, and that Palucki's name was on the list. Fasano conceded that "they specifically didn't come out and mention age. But my gut feeling, from what I had seen and being on the staff, I was quite aware what their intention was." Yet the only other person he mentioned as being on the hit list was in his early thirties. The fact that Fasano had an animus against Sears and the yuppies whom he believed Sears was hiring to replace older men did not disquali-

fy Fasano's testimony from consideration. See *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 924 (7th Cir.1988); *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1423 (7th Cir.1986). But the fact that the hit list contained only two names, one of a young man, and the further fact that Fasano had merely a "gut feeling" that Sears was after Palucki because of Palucki's age, renders Fasano's deposition of too little evidentiary value to create, all by itself, a genuine issue of material fact concerning the motive for Palucki's discharge. Indeed the deposition is even weaker than we have let on. Remember that Fasano left Sears two years before Palucki, meaning that when Fasano heard about the hit list Palucki was not yet 40. So neither person on the hit list was over 40 and this meant that both could have been fired with impunity, since the protections of the Age Discrimination in Employment Act do not set in until age 40. Why would Sears have waited till Palucki enjoyed the protection of the Act to fire him?

A party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture. "Supporting and opposing affidavits shall be made *on personal knowledge,*" Fed.R. Civ.P. 56(e) (emphasis added), a requirement that parallels Rule 602 of the Federal Rules of Evidence, which forbids a witness (other than an expert witness, which Fasano was not) to testify to matters of which he does not have personal knowledge. See *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988). Personal knowledge within the meaning of these rules includes, it is true, inferences from sense data as well as the sense data themselves (all knowledge is inferential—including sense data), cf. *Agfa–Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir.1989), but there are limits. And if, as appears likely, Fasano would not be permitted at a trial to testify to his "gut feeling" regarding Sears's motive for wanting to discharge Palucki, his deposition can hardly be thought to create a genuine issue of material fact—that is, a triable issue. See, for a factually similar case, *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir.1987).

But we would not want to rest our decision on a technicality about the admissibility of evidence. A more important principle is at stake. Rule 56 is a practical tool of governance. Its purpose is to head off a trial, with all the private and public expenses that a trial entails, if the opponent (usually although not always the plaintiff) of summary judgment does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on the facts and the law, rather than on sympathy or antipathy or private notions of justice. When it is plain that the plaintiff has no case that could persuade a reasonable jury, the defendant is entitled to summary judgment.

Palucki wanted to use Fasano's deposition to show that Sears really did transfer him from big-ticket to soft-ticket items in the hope that he would fall on his face. So improbable is such a scheme (especially since Sears could have fired Palucki with impunity before he turned 40), and so vague, scanty, and contradictory the factual basis that Fasano offered for his "gut feeling" concerning Sears's hostility to older workers, that Palucki, to get to trial, was obliged to conduct a further investigation; he could not rest on the affidavit. He could have deposed the persons allegedly responsible for the hit list (Fasano named them in his deposition), or have sought to substantiate the pattern suspected by Fasano of Sears's replacing older by younger employees. But he did neither of these things, and the conjectures in Fasano's deposition were not enough, given all the other evidence, to justify a jury's concluding that Sears had concocted, and carried out at great potential cost to itself, a Machiavellian scheme to get rid of a minor, youngish employee whom it could have fired with impunity a few months before putting the scheme into effect.

The workload crisis of the federal courts, and realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, have led the courts to take a critical look at efforts to withstand defendants' motions for summary judgment. A district judge faced with

such a motion must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed. See *Anderson v. Liberty Lobby, supra,* 477 U.S. at 249, 106 S.Ct. at 2510; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Mason v. Continental Illinois National Bank,* 704 F.2d 361, 367 (7th Cir.1983). The district judge in this case found the evidence so one-sided as to make a trial an exercise in futility for the plaintiff, and we agree with his judgment.

Affirmed.