61 F.3d 905
 69 Fair Empl.Prac.Cas. (BNA) 768
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Sandra D. HARRISON, Plaintiff/Appellant,
v.
LARUE D. CARTER MEMORIAL HOSPITAL, Defendant/Appellee.
 No. 94-3775.
 United States Court of Appeals, Seventh Circuit.
 Argued June 13, 1995.
Decided July 25, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Sandra D. Harrison brought suit against her employer, Larue D. Carter Memorial Hospital (Carter Hospital), alleging gender discrimination. 42 U.S.C. Secs. 2000e et seq. The district court granted summary judgment in favor of the defendant and Harrison appeals. We affirm.
 
 I. BACKGROUND
 
 2
 Sandra Harrison has worked at Carter Hospital, a state facility, as a rehabilitation therapist since 1972.[1] During the time relevant to this appeal, the Rehabilitation Therapy Department was divided into three units: Adult, Research and Youth. Youth Services was further divided into two units: Adolescent and Child. Harrison worked in the Adult unit. During her employment at Carter Hospital, Harrison maintained the classification of Rehabilitation Therapist IV (RT IV). A Rehabilitation Therapist III (RT III) position pays nine percent more than an RT IV position and includes supervisory responsibilities. Pursuant to Indiana statute, Carter Hospital has been allocated four RT III positions and ten RT IV positions. The hospital then assigns therapists to the three service areas. Carter Hospital hires and promotes personnel from the State Personnel Department's (Department) eligibility list.
 
 
 3
 In 1990, an RT III position became open because an RT III left the Adult Unit. Harrison applied for the position and she was included on the Department's list, but was not selected. The position was filled by Jerry Joy, who had been an RT IV in the Adolescent Unit. Carter Hospital then allocated the RT III position to the Adolescent Unit. In was not uncommon for the hospital to transfer RT III positions to another unit and replace the vacancy in the original unit with an RT IV.
 
 
 4
 In late 1991, another RT III position became available. Interviews were conducted by Dr. Arthur Sterne, Director of Professional Practice at Carter Hospital, and Elsie Fulmer, chairperson of the Rehabilitation Therapy Department. Harrison applied, but again was not chosen. Instead, a male, David Andy Howard, was selected for the position. It is the 1991 opening that is the subject of this litigation.
 
 
 5
 Harrison filed a complaint with the Equal Employment Opportunity Commission (EEOC) and received a right to sue letter. She filed suit under Title VII in the Southern District of Indiana alleging sex discrimination and retaliation. See 42 U.S.C. Secs. 2000e et seq.[2] Carter Hospital moved for summary judgment, which the district court granted. The court denied Harrison's subsequent motion to amend the judgment and Harrison filed a timely notice of appeal.
 
 II. STANDARD OF REVIEW
 
 6
 We review a grant of summary judgment by considering all factual issues in the light most favorable to the nonmoving party and determining de novo whether there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catratt, 477 U.S. 317, 324 (1986); Colburn v. Trustees of Indiana Univ., 973 F.2d 581, 585 (7th Cir.1992).
 
 III. DISCUSSION
 
 7
 Harrison's claim of gender discrimination[3] is based on indirect evidence and thus governed by the burden-shifting method articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In order to establish a prima facie case of gender discrimination, Harrison has to show that she: (1) was in the protected group, (2) applied for and qualified for the position, (3) was rejected, and (4) the employer hired or promoted someone outside the protected group. See Cherry v. AT & T Co., 47 F.3d 225 (7th Cir.1995); Hughes v. Derwinski, 967 F.2d 1168 (7th Cir.1992). Harrison has met these requirements.[4]
 
 
 8
 Once the prima facie case has been established, the burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment action. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1994). In response to Harrison's allegations, Carter Hospital stated that Howard was chosen instead of Harrison because he best met the criteria and qualifications for the RT III position. Howard's interest and experience with adolescents weighed heavily in the decision. According to Sterne, Carter Hospital hoped to expand the adolescent unit and needed an RT III there to supervise. According to Carter Hospital, in addition to the state-mandated requirements, Sterne and Fulmer used three criteria to select an individual for the RT III opening: (1) experience with mentally ill adolescents; (2) experience and a desire to participate in therapeutic camping; and (3) a willingness to engage in active sports with the adolescents. Howard fulfilled these additional requirements. Sterne and Fulmer stated that Harrison did not meet these requirements.
 
 
 9
 After the employer has provided a nondiscriminatory reason for its decision, the burden of production shifts back to the employee to show that the articulated reasons are pretextual. See Anderson, 13 F.3d at 1124 (plaintiff must produce evidence from which a rational fact-finder could infer the employer's reasons were pretextual). The parties agree that the issue on summary judgment and in this appeal is whether Harrison has met her burden of showing Carter Hospital's proffered nondiscriminatory reasons for not promoting Harrison were mere pretext. To prove that Carter Hospital's stated reasons are pretextual, Harrison must establish that she has been the victim of intentional discrimination. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875 (1984). Harrison may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1163 (7th Cir.1994). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993).
 
 
 10
 Because Harrison has offered no direct evidence of sex discrimination, the question before us is whether she has produced evidence from which a reasonable fact-finder could infer that Carter Hospital lied about its proffered nondiscriminatory reason for not promoting her. See Anderson, 13 F.3d at 1124; Courtney v. Biosound, Inc., 42 F.3d 414, 425 (7th Cir.1994). An employee may prove that the employer's reasons are not worthy of credence through evidence showing: (1) that the proffered reason has no basis in fact, (2) that the explanation given was not the true reason, or (3) that the reasons stated were insufficient to warrant the action taken. Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1133 (7th Cir.1994). Harrison's production falls short of demonstrating that Carter Hospital's reasons are unworthy of credence.
 
 
 11
 Harrison argues that filling the 1990 vacancy for an RT III position in the Adult unit with someone from Youth services, and then transferring the RT III position to the Youth unit, supports her claim of discrimination. Specifically, Harrison asserts that the individual promoted to RT III in 1992 did not need to be assigned to the Adolescent Unit, and therefore Carter Hospital's reasoning as to Howard's better suitability for Adolescent care is pretextual. As the district court concluded, however, these facts do not prove that Carter Hospital's explanation was pretextual. Notwithstanding Harrison's rank on the Department's list, she has not overcome the nondiscriminatory reason offered by Carter Hospital as to why Howard was chosen. See Kirk v. Federal Property Management Corp., 22 F.3d 135, 137 (7th Cir.1994) ("Title VII certainly allows employers to hire anyone they want, so long as they do not discriminate against anyone because of certain statutorily enumerated categories like race or color").
 
 
 12
 Harrison has argued that she was clearly the best qualified candidate for a supervisory position. However, at oral argument Harrison's counsel informed us that the RT III in the Adolescent unit supervises only one individual, a music therapist. Supervision of one person supports Carter Hospital's articulated reason for hiring Howard, even if Harrison possessed superior supervisory skills: Howard better fit the qualifications desired for an RT III in the Adolescent unit, such as an ability and desire to engage in recreational activities. Harrison's argument fails to support her claim that Carter Hospital's reasons for hiring Howard are pretextual.
 
 
 13
 Additionally, there is no evidence to suggest that Harrison's gender influenced or dictated the decision in this case. Merely because a male was chosen instead of Harrison is insufficient to prove sex discrimination. See Palucki v. Sears, Roebuck and Co., 879 F.2d 1568, 1571 (7th Cir.1989) ("An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age.").
 
 
 14
 Harrison also points to a departmental reorganization to prove pretext, but this evidence is insufficient. Harrison asserts that a paper trail would accompany any reorganization that had been planned and argues that a reorganization occurred in response to this litigation. There is no connection even suggested between any reorganization and the decision not to promote Harrison. Harrison also argues that Carter Hospital did not limit the applicants to those interested in and qualified for the Adolescent Unit. Courtney, 42 F.3d at 426 (citing Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir.1987)). Again, these arguments fail to establish evidence from which a rational fact-finder could infer Carter Hospital's reasons were pretextual. See Anderson, 13 F.3d at 1124; Weihaupt v. American Medical Ass'n, 874 F.2d 419, 429 (7th Cir.1989) ("we do not sit as a super-personnel department that reexamines an entity's business decisions.").
 
 IV. CONCLUSION
 
 15
 Harrison is unable to carry her burden of showing that Carter Hospital's nondiscriminatory reasons were pretextual. Therefore, we AFFIRM the district court's judgment.
 
 
 
 [1]
 Harrison has been employed as a rehabilitation therapist since 1967
 
 
 [2]
 Title VII makes it unlawful "for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex...." 42 U.S.C. Sec. 2000e-2(a)(1)
 
 
 [3]
 Harrison also claimed retaliation in the district court. Although mentioned in the facts section of her appellate brief, Harrison does not appeal the district court's grant of summary judgment on this issue
 
 
 [4]
 Although Carter Hospital challenged in the district court whether Harrison was qualified for the job, this argument is not renewed on appeal