Harold A. BACK, Plaintiff,

v.

ROOTS BLOWER DIVISION OF
DRESSER INDUSTRIES,
INC., Defendant.

No. IP 96–0305 C M/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 13, 1997.

Bruce D. Brattain, Michael P. Ewing, Brattain & Minnix, Indianapolis, IN, for Plaintiff.

Daniel G. Emerson, Steven G. Rudolf, Bose McKinney & Evans, Indianapolis, IN, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

In the case at bar, Plaintiff Harold A. Back alleges that Defendant Roots Blower Division of Dresser Industries, Inc. ("Roots") terminated him on the basis of his age, thereby violating the Age Discrimination in Employment Act ("ADEA" or "Act"). 29 U.S.C. §§ 621–34. Roots has responded that Back lost his job as part of a reduction in force necessitated by changes in the marketplace and the goal of staying competitive. On September 17, 1996, Roots filed the present motion for summary judgment. For the reasons stated fully below, this Court now **GRANTS** this motion.

## I. BACKGROUND

According to the record presently before this Court, Roots manufactures industrial blowers, compressors, and centrifugal products at its Connersville, Indiana facility. Beginning on July 18, 1977, Back worked at this facility as supervisor of the receiving depart- ment. In this capacity, Back oversaw the receipt, storage, and distribution of materials used in Roots' manufacturing process. Throughout his employment with Roots, Back received annual evaluations, which rated him as "fully satisfactory," the midpoint designation.

In the early 1990s, Roots' sales began to decrease, and its percentage of the market share began to decline. In part, this resulted from excessive operating costs and duplication of efforts in the Company's manufacturing department. Roots then began to consider what changes would be necessary to remain competitive. Because the Company anticipated that it would need to reduce its workforce, it offered a voluntary early retirement program to all salaried employees over the age of fifty-five who had ten or more years of service. On January 19, 1993, Roots gave Back a letter explaining the terms of this program, but Back declined the offer.

By May of 1993, Roots had decided to implement a new managerial philosophy known as "Focused Factory." Under this philosophy, the Company aligned its employees into various teams responsible for particular product lines. The Company outlined this new manufacturing structure and prepared profiles of team members. Next, Roots reappraised its manufacturing personnel to determine how they would fit into the Focused Factory concept. As a result of this reevaluation, thirty-eight employees received reassignments, and the Company eliminated eleven salaried management employees. Back was one of the employees selected for termination.

Roots has cited several factors to explain why Back did not fit into their Focused Factory strategy. First, even before implementation of this reduction in force, Director of Manufacturing Donald R. Lane had criticized the Receiving Department for a variety of reasons—including untimely deliveries, misplaced materials, apparent disorganization, and excessive costs. Under the Focused Factory concept, Roots believed the receiving department supervisor needed to have certain knowledge and expertise, including an ability to work with the Company's

new computer system. Although Roots considered retaining Back, the Company ultimately elected to terminate him because, in the Company's opinion, Back lacked sufficient understanding of Roots' overall business, did not know enough about the products and processes outside his department, and did not possess the willingness or the capacity to implement the necessary changes in the Receiving Department. In addition, the Company did not believe Back had the necessary skills to make a valuable contribution under the new Focused Factory concept.

Conversely, Back has pointed to a variety of evidence to demonstrate that he performed his job responsibilities well. First, Back disputes whether Lane ever informed him or his supervisor of any problems. Back has also cited the deposition testimony of Robert Stamm, his supervisor during most of his time with Roots, who described Back as a "model employee" who planned ahead for equipment use needs, followed directions, used his manpower effectively, and offered many suggestions regarding cost reduction. Stamm did not recall any discussions with Lane or Back criticizing Back's performance or the Receiving Department. Stamm also indicated that he believed Back would be able to use the new computer system.

As previously noted, Roots ultimately did decide to terminate Back. The Company then selected Dennis Boughner to replace Back as receiving supervisor. On November 5, 1993, Roots sent its proposed termination list to its corporate headquarters for review and approval. Dresser corporate management approved the list on November 11, 1993. Four days later, Roots notified the eleven employees, including Back, of the decision to terminate them.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Irrelevant or unnecessary facts do not deter summary judgment— even when in dispute. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir.1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.1996).

On certain occasions, the Seventh Circuit had suggested that a court approach a motion for summary judgment in an employment discrimination case with a particular degree of caution. *See, e.g., Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). The language implied that summary judgment might be less appropriate in this context based upon the presence of issues of motive and intent. *Holland*, 883 F.2d at 1312. However, as the Seventh Circuit has recently emphasized, these cases do not establish a heightened summary judgment standard for employment-related case. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir.1997). Instead, the language from the prior cases simply means "that courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." *Id.* (emphasis in original). Even when discriminatory intent is at issue, summary judgment is appropriate when the nonmovant presents no evidence to indicate motive or intent in support of her position. *See Holland*, 883 F.2d at 1312. Further, the nonmovant will not defeat summary judgment merely by

pointing to self-serving allegations without evidentiary support. *Cliff v. Board of School Comm'rs,* 42 F.3d 403, 408 (7th Cir.1994).

## B. THE ADEA CLAIM

Under the express terms of the ADEA, an employer may not discharge any individual because of that individual's age. 29 U.S.C. § 623(a)(1). To prevail in an ADEA action, the plaintiff must ultimately demonstrate that the defendant intentionally discriminated against him. *Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 681 (7th Cir.1996). To withstand a motion for summary judgment, the ADEA plaintiff may either supply direct evidence or utilize the familiar burden-shifting framework originally articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Weisbrot,* 79 F.3d at 680. In the present case, Back has neither presented direct evidence nor argued that his existing evidence should be treated as such. Accordingly, this Court shall proceed by applying the *McDonnell Douglas* framework.

The Seventh Circuit and this Court have often recited the *McDonnell Douglas* analysis, so this Order shall not reiterate the framework in great detail. Initially, an ADEA plaintiff must supply evidence sufficient to establish the four elements of the prima facie case: (1) he was in the protected age group; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) younger employees received more favorable treatment. *Weisbrot,* 79 F.3d at 681. Although Roots concedes that Back can establish three of these four elements, the Company contends that he has not demonstrated that he was qualified for the redefined receiving manager position. More specifically, Roots asserts that Back lacked the skills emphasized under its Focused Factory initiative. The parties have disputed the value of Back's prior evaluations as evidence of his skills, yet this Court believes Back has supplied sufficient evidence that he performed his duties satisfactorily to meet his burden of establishing a prima facie case.

Next, the burden shifts to Roots to articulate a legitimate, nondiscriminatory reason for its decision to terminate Back. *St. Mary's Honor Ctr.,* 509 U.S. at 506, 113 S.Ct. at 2746–47; *Weisbrot,* 79 F.3d at 681. "[F]or a reason to be 'legitimate,' in the sense of sufficient to rebut a prima facie case, it need not be a good or sympathetic justification for what the employer did; it need only be a nondiscriminatory and, if true, (even if short-sighted or ultimately a product of poor business judgment) merely explain why the challenged action was taken." *Timm v. Mead Corp.,* 32 F.3d 273, 275 (7th Cir.1994). The Company has explained that it terminated Back because, in light of the new Focussed Factory philosophy, he did not possess certain necessary traits and skills. In addition, Roots believed that Boughner could fulfill the role of receiving department supervisor more effectively than Back. This explanation suffices to meet Roots' burden.

At this stage, Back must show that Roots' seemingly legitimate reason is, in fact, a pretext for discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48; *Weisbrot,* 79 F.3d at 681. To do so, he must show not only that Roots' proffered reason did not actually motivate its decision but also that age was the motivating factor. *St. Mary's Honor Ctr.,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48. In short, he must prove "*both* that the reason was false, *and* that discrimination was the real reason." *Id.* at 515, 113 S.Ct. at 2752. Back has not done so.

To show pretext, Back has focussed primarily upon his own performance. Back has provided evidence that his supervisor evaluated him favorably and that no one discussed any shortcomings with him. In addition, he had already begun to use the Company's new computer system. Back has also asserted that the Company deviated from its typical termination procedures. According to Back, this evidence, taken as a

whole, demonstrates that Roots has offered a pretextual reason for its action.

This Court does not agree. In evaluating an employer's explanation, a court must "keep in mind that there is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that the employer made a mistake or a bad business judgment." *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994). As stated by the Seventh Circuit, a court does "'not sit as a super-personnel department that reexamines an entity's business decisions.'" *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (*quoting Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986)). No matter how mistaken, misguided, or even medieval a company's employment practices might seem, the court must limit its inquiry to whether the employer offered an honest explanation for its decision. *Id.*

In the present case, Back has offered ample evidence that he performed his job adequately, yet Roots has never contradicted this assertion. Rather, Roots implemented a reduction in force to identify the workers best suited for the particular path the Company had chosen to follow. According to Roots, the evaluation process it employed led to the conclusion that Boughner would be a better receiving department manager than Back. At most, Back has supplied evidence that shows Roots might have made a bad business judgment, but this Court has no authority to second guess a company's determination of who will be best-qualified to fill a particular position. The bare fact that Roots selected Boughner rather than Back does not demonstrate that the Company possessed an improper discriminatory animus.

■ In his deposition, Back also cited the early retirement offer as evidence of pretext. The Seventh Circuit has rejected the notion that encouraging an employee to utilize an early retirement plan constitutes adverse action against that employee. *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 425–26 (7th Cir.1989); *Henn v. National Geographic Soc.*, 819 F.2d 824, 828 (7th Cir. 1987). In doing so, the court has remarked that "an offer of incentives to retire early is a benefit to the recipient, not a sign of discrimination." *Henn*, 819 F.2d at 828. Moreover, the existence of an early retirement program "does not rise to the level" of establishing that an employer has the motive of discriminating against its older employees. *Weihaupt*, 874 F.2d at 426. Under the circumstances of this case, Roots made the early retirement offer to certain employees months before it decided to implement its Focused Factory system. Back has not demonstrated any link between those who received the early retirement offer and those ultimately selected for termination. Consequently, the mere fact of the offer does not support an inference of discrimination in this case.

■ Finally, Back has pointed to the fact that Graceanna Jones of Roots Corporate assembled a document which noted the ages of those selected for termination. Although Back asserts that this list demonstrates that age was a factor in the termination decision, the document merely shows that Roots knew the ages of the individuals it planned to terminate and the employees it planned to retain. Nothing suggests that the Company targeted one group over the other. Moreover, no evidence in the record suggests that Jones participated in the decision to terminate Back. Without such evidence, it is difficult to understand how this list of ages and percentages could be construed as proof that Roots terminated Back because of his age. Conversely, Roots has explained that it provided its corporate parent with a list of the individuals slated for termination so that the parent company could ensure that no violation of the anti-discrimination laws might ensue. According to Roots, Jones prepared the list cited by Back as part of this investigation. To hold that a document prepared by a company trying to obey the law might constitute evidence that the company had violated the law would place corporations in the unenviable position of being unable to investigate potential discrimination without providing evidence of discrimination. That this Court declines to do.

"Once Defendant has presented a reasonable explanation for Plaintiff's treatment, if Plaintiff cannot then show any evidence of

pretext, the Defendant may properly be granted summary judgment." *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1133 (7th Cir. 1994). Here, Roots has explained that, under its Focused Factory Philosophy, it believed Boughner would be a better receiving department supervisor than Back. Back has supplied no evidence suggesting that Roots' seemingly legitimate explanation masks a discriminatory motive. Accordingly, this Court concludes that summary judgment may properly be granted in favor of Roots.

## CONCLUSION

For the reasons set forth above, this Court now **GRANTS** Defendant Roots' motion for summary judgment.

IT IS SO ORDERED.